# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DIANE PETRELLA and NICK PETRELLA and N. P. and C. P. by their next friends and guardians, Diane and Nick Petrella; MICHELLE TROUVÉ and MARC TROUVÉ and J. T., Z. T., and N. T. by their next friends and guardians Michelle Trouvé and Marc Trouvé; MEREDITH and CHRIS BIHUNIAK and S. B., O. B., A. B. and E. B. by their next friends and guardians Meredith and Chris Bihuniak; MIKE WASHBURN and LAURENCE FLORENS and A. W. and R. W. by and through their next friends and guardians Mike Washburn and Laurence Florens; PAUL ERDNER and JULIE ERDNER and M.E. and A. E. by and through their next friends and guardians Paul Erdner and Julie Erdner; CHRISTOPHE SAILLY and CATALINA SAILLY and E. S. and N. S. by and through their next friends and guardians Christophe Sailly and Catalina Sailly, JOHN WEBB ROBERTS and M. C. R., M. R. and W. C. R. by and through their next friend and guardian John Webb Roberts; TERRE MANNE and C. J. M. by and through his next friend and guardian Terre Manne, ALISON BARNES MARTIN and C. O. M. and C. E. M. by and through their next friend and guardian Alison  Barnes Martin; KURT KUHNKE AND LISA KUHNKE and A. K. by and through her next friends and guardians Kurt Kuhnke and Lisa Kuhnke, <br><br> Plaintiffs. <br><br> vs. <br><br> MARK PARKINSON, Governor of Kansas, in his official capacity; STEVE SIX, Kansas Attorney General, in his official capacity; DENNIS MCKINNEY, Kansas State Treasurer, in his official capacity; DR. DIANE DeBACKER in her official capacity as Kansas Commissioner of Education; JANET WAUGH in her official capacity as Chair of the Kansas State Board of Education; KATHY MARTIN in her official capacity as a member of the State Board of Education; SUE STORM in her official capacity as a member of the Kansas State Board of Education; KENNETH WILLARD in his official | Civil Action No. 10-CV-2661 <br> JWL/KGG |

capacity as a member of the Kansas State Board of Education; JOHN W. BACON in his official capacity as a member of the Kansas State Board of Education; DR. WALT CHAPPELL in his official capacity as a member of the Kansas State Board of Education; CAROLYN L. WIMS-CAMPBELL in her official capacity as a member of the Kansas State Board of Education; JANA SHAVER in her official capacity as Vice-Chair of the Kansas State Board of Education; SALLY CAUBLE in her official capacity as a member of the Kansas State Board of Education; DAVID T. DENNIS in his official capacity as a member of the Kansas State Board of Education,

Defendants.

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, OR OTHER RELIEF

### INTRODUCTION

1.     Plaintiffs are schoolchildren and parents in the Shawnee Mission Unified School District No. 512 ("Shawnee Mission School District"), who bring this action pursuant to 42 U.S.C. § 1983 to challenge the unconstitutional cap placed by Kansas law on the amount of money by which citizens within a local school district may voluntarily supplement the education funds provided by the State (the Local Option Budget ("LOB") Cap) pursuant to the  Kansas School District Finance and Quality Performance Act, K.S.A. 72-6433(b). The LOB Cap strips Plaintiffs and local citizens of their fundamental freedom to use their own money to improve the public education of their children.  The state of Kansas intentionally prohibits local citizens from spending their own money on something they value, namely the public education of their children.  This statutory prohibition not only deprives Plaintiffs and local citizens of fundamental liberty and property rights, but it also prevents the students of Shawnee Mission School District from receiving the education they deserve and to which they are entitled under the law.

2

2.      As long ago as 1923, the Supreme Court held that the "liberty" protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution includes the right "to establish a home and bring up children" and "to control the education of their own." *Meyer v Nebraska*, 262 U.S. 390, 399, 401 (1923).  Two years later, in *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925), the Court again held the "liberty of parents and guardians" includes the right to direct the upbringing and education of children under their control."  The Court explained that "[t]he child is not the mere creature of the State; those who nurture and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."  As recently as 2000, the Supreme Court reaffirmed that among the most fundamental liberties protected by the Due Process Clause is the right of parents to control and participate in the education of their children stating, "the interest of parents in the care, custody, and control of their children" "is perhaps the oldest of the fundamental liberty interests recognized by this Court."  *Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("Liberty Interests").

3.      In addition to these Liberty Interests, the Supreme Court also has recognized that an individual has a fundamental right to make decisions about the use of his or her own property, especially when the individual wants to use his or her own property to aid, nurture, and care for his or her own children. *Moore v East Cleveland*, 431 U.S. 494, 513 (1977) ("Property Interests").

4.      Further, Plaintiffs have a fundamental First Amendment right to assemble, associate and band together to advance the educational interests of their children by devoting as much of their collective resources as they are willing to commit through the mechanism of local taxation.  This collective right is expressed at the ballot box in the form of a popular vote to increase local taxes, K.S.A. 72-6433(e).  The Supreme Court has recognized the collective nature

3

of associational and expressive liberties guaranteed by the First Amendment.  *Citizens Against Rent Control/Coalition for Fair Housing v City of Berkley, California*, 454 U.S. 290, 300 (1981). This fundamental freedom to act together as a community through collective, democratic action for improvement in local public education is grounded in the due process and equal protection clauses of the Fourteenth Amendment as well as in the rights of assembly, association, petition and speech of the First Amendment as applied to the State of Kansas and Defendants through the Fourteenth Amendment ("Collective Political Freedoms").

5.      But today, as a result of the passage of the LOB Cap, and its continuing enforcement by Defendants, the State of Kansas abridges Plaintiffs' fundamental Liberty and Property interests and Collective Political Freedoms guaranteed by the First and Fourteenth Amendments to the United States Constitution.

6.      The Cap also deprives Plaintiffs of equal protection of the laws under the Fourteenth Amendment of the United States Constitution.  The State intentionally underfunds the Shawnee Mission School District.  The State allocates to the District some of the lowest per pupil expenditures of any school district in the state.  The Shawnee Mission School District is in the bottom 11 percent (11%) of all school districts in terms of total per pupil funding.  Thus, the District is one of the poorest school districts in funding for classroom instruction.  This gross disparity in state money deprives Shawnee Mission School District schoolchildren of the educational benefits that other school districts and children receive who are funded at much higher levels by the State.

7.      Through the LOB Cap, the Kansas legislature essentially tells Plaintiffs that they may not raise their own taxes to improve their own school system even though that is what the voters in the Shawnee Mission School District want to do.  Every request submitted to local

voters requesting local tax increases for local public education historically has passed without objection.  The LOB Cap effectively prohibits Plaintiffs from self-help to achieve comparable funding levels to other better funded school districts for which the State shows preferential treatment. The State's prohibition against voluntary increases in local taxes to achieve equivalent funding levels to other school districts intentionally deprives Plaintiffs of equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

8.      The LOB Cap serves no legitimate purpose.  It reduces educational quality, increases class size, causes severe budget cuts, and precludes school districts from devoting additional resources to aid disadvantaged and underprivileged children.  Ironically, while Kansans are free to spend unlimited amounts of money on junk food, video games, and other threats to the best interests of their children, they are prohibited from democratically taxing themselves to improve the education of public school children.  In a nation founded on liberty, self-government, and local initiative, and at a time when America's educational system is widely recognized to be in financial crisis and requires substantial improvement, it is startling that any State would prohibit its communities from improving their schools through collective civic action.

9.      The LOB Cap has caused Shawnee Mission School District to adopt a harmful and disruptive plan (the "School Closure Plan") to close schools and revise boundaries to consolidate schools, in an effort to address the significantly reduced budget for the next school year.  Both the LOB Cap and the School Closure Plan will cause substantial injury to Plaintiffs. Accordingly, Plaintiffs seek a preliminary injunction, a permanent injunction, and declaratory relief against Defendants, the state officers in their official capacities responsible for enforcement of the unconstitutional LOB Cap.

5

10.     For these reasons, Plaintiffs ask this Court to enjoin, preliminarily and permanently, all enforcement of the LOB Cap and any other Kansas statutes that seek to restrict local citizens and taxpayers from voluntarily imposing upon themselves additional local property taxes to improve the education of their local school districts.

## JURISDICTION AND VENUE

11.     This action arises under the Constitution and laws of the United States and presents a federal question within the subject-matter jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

12.     Venue is proper in this judicial district under 28 U.S.C. § 1391.

## DECLARATORY AND INJUNCTIVE RELIEF

13.     This Court is authorized to grant declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and Rule 57 of the Federal Rules of Civil Procedure, and to issue the preliminary and permanent injunctive relief requested by the Plaintiffs pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## PARTIES AND STANDING

14.     Plaintiffs are parents, schoolchildren and residents of Kansas and the United States of America and are enrolled in the Shawnee Mission School District.  The parents in this suit assert their own legal rights because the LOB Cap interferes with their legally protected interests in raising their children.  As next friends and representatives, the parents also assert the legal rights and interests of their children.

15.     Plaintiffs Diane and Nick Petrella sue in their own right as parents, residents and citizens of the State of Kansas and Shawnee Mission School District, and Plaintiffs N. P. and C. P. by next friends and guardians Diane and Nick Petrella, are students attending public school at

6

U.S.D. 512 and are citizens and residents of the State of Kansas and the Shawnee Mission School District.

16.     Plaintiffs Michelle and Marc Trouvé sue in their own right as parents, residents and citizens of the State of Kansas and Shawnee Mission School District, and Plaintiffs J. T., Z. T. and N. T. by next friends and guardians Michelle and Marc Trouvé, are students attending public school at U.S.D. 512 and are citizens and residents of the State of Kansas and the Shawnee Mission School District.

17.     Plaintiffs Meredith and Chris Bihuniak sue in their own right as parents, residents and citizens of the State of Kansas and Shawnee Mission School District, and Plaintiffs S. B., O. B., A. B. and E. B. by next friends and guardians Meredith and Chris Bihuniak, are students attending public school at U.S.D. 512 and are citizens and residents of the State of Kansas and the Shawnee Mission School District.

18.     Plaintiffs Mike Washburn and Laurence Florens sue in their own right as parents, residents and citizens of the State of Kansas and Shawnee Mission School District, and Plaintiffs A. W. and R. W. by next friends and guardians Mike Washburn and Laurence Florens, are students attending public school at U.S.D. 512 and are citizens and residents of the State of Kansas and the Shawnee Mission School District.

19.     Plaintiffs Paul and Julie Erdner sue in their own right as parents, residents and citizens of the State of Kansas and Shawnee Mission School District, and Plaintiffs M. E. and A. E. by next friends and guardians Paul and Julie Erdner, are students attending public school at U.S.D. 512 and are citizens and residents of the State of Kansas and the Shawnee Mission School District.

20.     Plaintiffs Christophe and Catalina Sailly sue in their own right as parents,

residents and citizens of the State of Kansas and Shawnee Mission School District, and Plaintiffs E. S. and N. S. by next friends and guardians Christophe and Catalina Sailly, are students attending public school at U.S.D. 512 and are citizens and residents of the State of Kansas and the Shawnee Mission School District.

21.    Plaintiff John Webb Roberts sues in his own right as a parent, resident and citizen of the State of Kansas and Shawnee Mission School District, and Plaintiffs M. C. R., M. R. and W. C. R. by next friend and guardian John Webb Roberts, are students attending public school at U.S.D. 512 and are citizens and residents of the State of Kansas and the Shawnee Mission School District.

22.    Plaintiff Terre Manne sues in her own right as a parent, resident and citizen of the State of Kansas and Shawnee Mission School District, and plaintiff C. J. M. by next friend and guardian Terre Manne, is a student attending public school at U.S.D. 512 and a citizen and resident of the State of Kansas and the Shawnee Mission School District.

23.    Plaintiff Alison Barnes Martin sues in her own right as a parent, resident and citizen of the State of Kansas and Shawnee Mission School District, and Plaintiffs C. M. and C. E. M. by next friend and guardian Alison Barnes Martin, are students attending public school at U.S.D. 512 and are citizens and residents of the State of Kansas and the Shawnee Mission School District.

24.    Plaintiffs Kurt and Lisa Kuhnke sue in their own right as parents, residents and citizens of the State of Kansas and Shawnee Mission School District, and plaintiff A. K. by next friends and guardians Kurt and Lisa Kuhnke, is a student attending public school at U.S.D. 512 and is a citizen and resident of the State of Kansas and the Shawnee Mission School District.

25.    Defendant Mark Parkinson is Governor of the State of Kansas and may be served

8

with process at the office of the Attorney General for the State of Kansas, Memorial Hall, 2nd Floor, 120 SW 10th Street, Topeka KS 66612. In his official capacity, the Governor is the chief executive officer of the State of Kansas. It is his responsibility to ensure that the laws of the State are properly enforced.

26.     Defendant Steve Six is the Attorney General of the State of Kansas and may be served with process at Memorial Hall, 2nd Floor, 120 SW 10th Street, Topeka KS 66612. In his official capacity, the Attorney General is the chief legal officer of the State of Kansas. It is his duty to see that the laws of the State are uniformly and adequately enforced.

27.     Defendant Dennis McKinney is Treasurer of the State of Kansas and may be served with process at 900 S.W. Jackson, Suite 201, Topeka, Kansas 66612-1235. In his official capacity, the Treasurer is the chief officer of the State of Kansas responsible for collections to and expenditures from the state treasury with respect to public K-12 education and administration of the overall school finance scheme.

28.     Defendant Dr. Diane De Backer is the Commissioner of Education of the Kansas State Department of Education and may be served with process at 120 S.E. 10th Ave, Topeka, Kansas 66612. In her official capacity, the Commissioner is responsible for the enforcement of the education laws generally and the school finance laws in particular.

29.     Defendant Janet Waugh is the Chair of the Kansas State Department of Education and may be served with process at 120 S.E. 10th Ave., Topeka, Kansas 66612. In her official capacity, she is responsible for the enforcement of the education laws generally and the school finance laws in particular.

30.     Defendant Jana Shaver is Vice-Chair member of the Kansas State Board of

Education and may be served with process at 120 S.E. 10th Ave., Topeka, Kansas 66612.  In her official capacity, she is responsible for the enforcement of the education laws generally and the school finance laws in particular.

31.     Defendant Kathy Martin is a member of the Kansas State Board of Education and may be served with process at 120 S.E. 10th Ave., Topeka, Kansas 66612.  In her official capacity, she is responsible for the enforcement of the education laws generally and the school finance laws in particular.

32.     Defendant Sue Storm is a member of the Kansas State Board of Education and may be served with process at 120 S.E. 10th Ave., Topeka, Kansas 66612.  In her official capacity, she is responsible for the enforcement of the education laws generally and the school finance laws in particular.

33.     Defendant Kenneth Willard is a member of the Kansas State Board of Education and may be served with process at 120 S.E. 10th Ave., Topeka, Kansas 66612.  In his official capacity, he is responsible for the enforcement of the education laws generally and the school finance laws in particular.

34.     Defendant John W. Bacon is a member of the Kansas State Board of Education and may be served with process at 120 S.E. 10th Ave., Topeka, Kansas 66612. In his official capacity, he is responsible for the enforcement of the education laws generally and the school finance laws in particular.

35.     Defendant Dr. Walt Chappell is a member of the Kansas State Board of Education and may be served with process at 120 S.E. 10th Ave., Topeka, Kansas 66612.  In his official capacity, he is responsible for the enforcement of the education laws generally and the school

10

finance laws in particular.

36.     Defendant Carolyn L. Wims-Campbell is a member of the Kansas State Board of Education and may be served with process at 120 S.E. 10th Ave., Topeka, Kansas 66612.  In her official capacity, she is responsible for the enforcement of the education laws generally and the school finance laws in particular.

37.     Defendant Sally Cauble is a member of the Kansas State Board of Education and may be served with process at 120 S.E. 10th Ave., Topeka, Kansas 66612. In her official capacity, she is responsible for the enforcement of the education laws generally and the school finance laws in particular.

38.     Defendant David T. Dennis is a member of the Kansas State Board of Education and may be served with process at 120 S.E. 10th Ave., Topeka, Kansas 66612.  In his official capacity, he is responsible for the enforcement of the education laws generally and the school finance laws in particular.

39.     Defendants, and those subject to their supervision, direction, and control, are responsible for the enforcement of the LOB Cap.  The relief requested in this action is sought against each Defendant, as well as against each Defendant's officers, employees, successors, and agents and against all persons acting in cooperation with Defendant(s), under their supervision, at their direction, or under their control.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

40.     In 1992, the Kansas Legislature adopted the School District Finance and Quality Performance Act ("SDFQPA"), K.S.A. 72-6405 et seq., as amended, which establishes a system

11

of school finance for the State.  This systems entails a foundational level of funding to which all children in Kansas are entitled --- a per-pupil base rate, adjusted by certain factors, including low-enrollment weighting, high-enrollment weighting, At-Risk weighting, Non-proficient At-Risk weighting, and other weightings.  Pursuant to this scheme, all public school districts in the state are allotted funds to operate their education programs out of the State's general fund, which is composed of income, sales, and property taxes.   The present formula that gives each district a base is $4,012 per student (the Base State Aid Per Pupil "BSAPP").  This funding level represents a decline of $388 per student since 2005.

41.     In 2005, the Kansas Supreme Court declared the funding level for public education in Kansas unconstitutional because it was too low for a "suitable" education to occur under the state constitution.  *Montoy v State of Kansas*, 278 Kan.769, 773, 120 P.3d 306 (2005) (*Montoy* II).  By reducing the BSAPP from $4,492 to $4,012 the State of Kansas has failed to meet this constitutional duty.

42.     The state school finance system also authorizes a means for local school districts to fund educational services over and above the base level – the local option budget ("LOB").  K.S.A. 72-6433(a)(2), (c).  Individual school districts may levy additional local taxes to fund local option budgets, which supplement state educational funding.  Local taxes over a certain level are subject to the approval of residents and voters of the district. K.S.A. 72-6433(e).

43.     However, Kansas law places a cap on the amount of money a local school district may raise through an LOB, thereby prohibiting local school districts from increasing funds beyond the cap.  The legislature set the LOB Cap as 27% of state-provided funds for 2005, 29% for 2006, and 30% in 2007.  The LOB Cap is now set at 31%.  K.S.A. 72-6433(a)(1), (b).

44.     The LOB Cap prohibits any school district from raising additional local revenue

12

above the cap -- even if the residents are willing to impose upon themselves additional local taxes to improve their children's public education.

45.     As a result of the LOB Cap, Plaintiffs and other children in Kansas are denied the educational experience they deserve.  Class sizes in many school districts have become too large for adequate learning to take place.  In the Shawnee Mission School District, the average pupil-teacher ratio is 17 to 1 compared with the state average of 13 to 1.  The average classroom size is significantly larger and is substantially higher than the state average.

46.     The 2005 Kansas Legislative Post-Audit Committee's Cost Study Analysis asked and answered the following question:

"What does the educational research show about the correlation between the amount of money spent on K-12 education and educational outcomes?"

The Committee concluded that smaller class size is the only proven determinant of improved academic performance:

"Four of Five class-size studies we reviewed found that smaller classes led to improved student outcomes….Studies of factors other than class size were less consistent." (January 2006 Report to the Legislative Post Audit Committee by the Legislative Division of Post Audit, State of Kansas, "Cost Study Analysis:  Elementary and Secondary Education in Kansas—Estimating the Costs of K-12 Education"; Executive Summary, p. 23).

47.     The level of funding provided to schools is linked to student achievement according to the Legislative Division of Post Audit ("LPA"), a research arm of the Legislature. LPA recently "found a strong association between the amounts districts spend and the outcomes they achieve." (2006 Kansas Legislative Post Audit; Cost Study) ("A 1.0% increase in district performance was associated with a 0.83% increase in spending—almost a one-to-one relationship.  This means that all other things being equal, districts that spend more had better student performance….We can be more than 99% confident that there is a relationship between

13

spending and outcomes.").

48.     Class sizes are closely correlated with educational quality, as measured by standardized assessments and other benchmarks.  Accordingly, the increased class sizes caused by the LOB Cap are harming learning and reducing the quality of education in the Shawnee Mission School District and elsewhere in Kansas.

49.     In addition, the LOB Cap has caused the Shawnee Mission School District to slash its budget and significantly reduce educational services, including classroom teachers, nurses, counselors, reading specialists, foreign language programs, and extra-curricular activities. "In the past two years, SMSD [Shawnee Mission School District] has made $20 million in budget reductions including reducing nearly 100 teachers."  (Superintendent Gene Johnson's Report to SMSD Board dated Nov. 8, 2010 "Charting a Course", p. 2; "Requests for Personnel Changes FY2011, p. 12 showing 91 Full Time Equivalent ("FTE") teacher reductions for 2011-2012 school year).

50.     While the state funding to the Shawnee Mission School District has dramatically decreased causing significant reductions in educational services to its students, in recent years, economically disadvantaged students have dramatically increased.  Between 2003 and 2010, the economically disadvantaged student population increased by 116%.  In 2003-2004, the economically disadvantaged population was 14.2% as compared with the State of Kansas which was 37.5%, but in 2009-2010, the economically disadvantaged population increased to 30.7% as compared to the State of Kansas average of 45.7%, representing a 116% increase for Shawnee Mission School District versus a 22% increase for the state. Over the last five (5) years, there has been a seventy-three percent (73%) increase of minority students and English Language Learners in the Shawnee Mission School District as well.

14

51.     The LOB Cap disproportionately affects the Shawnee Mission School District because it receives one of the lowest levels of per-pupil funding in the State.  Of 296 Kansas school districts, Shawnee Mission ranks 265th.  Thus, Shawnee Mission is in the lowest eleven percent 11% of all school districts in total expenditures per pupil.  It is one of the poorest in the state even though it is the second largest school district in the state.  This means the Shawnee Mission School District is handicapped in its ability to adequately educate substantially more of the state's children than the vast number of better funded smaller districts.  (2009 SMSD Legislative Platform,p.1, 3 "…264 out of 296 school districts in the state currently outrank Shawnee Mission in available funding per pupil….Despite changes in the school finance formula since 2005, Shawnee Mission schools have the 265th lowest per pupil expenditure of the 296 districts in the state.").

52.     In 2008-2009, the Shawnee Mission School District received $4,701 per pupil in state aid compared to the state average of $7,344 per pupil—a difference of $2,643 per pupil less than the state average.  (See Kansas State Department of Education ("KSDE"),"State Totals—Amount Per Pupil").  Even when the state aid is combined with the maximum allowable local revenue (and any federal aid), the total funding for the Shawnee Mission School District is still one of the lowest in the state.  For 2008-2009, total funding for the Shawnee Mission School District was $12,174 per pupil compared with the state average of $12,660 per pupil, which represents $486 less per pupil.

53.     The gross disparity in funding is demonstrated by the 2008-2009 funding level to Greensburg School District (USD No. 422) in Kiowa County, which received the highest financial support per student at $96,921 per pupil versus SMSD's $12,174, a difference of $84,747 less funding per pupil!  This gross disparity in discriminatory funding is further

15

demonstrated by several other school districts, which receive significantly higher total per pupil expenditures than does the Shawnee Mission School District, including but not limited to, Nemaha Valley School District (USD 442) at $31,781, Chapman School District (USD 473), Dickinson County, at $21,741, and West Solomon Valley School District (USD 213), Norton County, at $21,953.(Kansas State Board of Education "5-Year per Pupil Expenditures Report").

54.     The Shawnee Mission School District recently announced that, as a result of its fiscal crisis, it was being forced to adopt a drastic and harmful School Closure Plan to close schools and revise boundaries to consolidate schools, in an effort to address the significantly reduced budget for the next school year.  The School Closure Plan is intended to result in an annual savings of $3 million per year.  The School Closure Plan will cause further harm to Plaintiffs and will further reduce the educational quality of the Shawnee Mission School District.

55.     At the same time, the Shawnee Mission School District publicly acknowledged: (a) that it was willing to submit to a vote of the people a modest tax increase if the LOB Cap was removed; (b) that the cost per family/taxpayer to avert the crisis and avoid school closings would be less than $25 per taxpayer; indeed, school district officials confirmed that the cost likely would be even lower: "a few dollars per taxpayer — really a nominal sum", and (c) an expectation that the taxpayers would approve a modest tax increase, given the historical willingness of voters to approve all tax increases requested in this area for improving local public education.

56.     Defendants are aware that they are intentionally underfunding the Shawnee Mission School District and other school districts in Kansas.  The LOB Cap deprives Plaintiffs of the necessary funding to achieve learning conditions proven to correlate with improvement on standardized state assessments.  The LOB Cap prohibits the parents and families of the Shawnee

16

Mission School District from voluntarily imposing upon themselves higher local taxes to improve their children's public education and to achieve an equal level of funding (as compared with other school districts in Kansas).

57.     The LOB Cap lacks a rational basis and serves no legitimate governmental purpose.  It reduces educational quality.  It harms special needs students, average students, and in fact all students. For example, the Shawnee Mission School District provides significantly more at-risk services to its non-proficient students than it receives in funding from the state.  The LOB Cap prevents the Shawnee Mission School District from devoting additional resources to at-risk, special needs, and underprivileged students.

58.     The LOB Cap fails to serve any purpose in promoting educational "equity."  In fact, it reduces educational equity by preventing the Shawnee Mission School District and other school districts from compensating for low per-pupil funding provided by the State.  The Shawnee Mission School District receives one of the lowest levels of per-pupil funding in the State.  The LOB Cap prevents the Shawnee Mission School District from correcting this imbalance.

59.     Legislators, business groups, and educational experts have all proposed abolition of the LOB Cap as part of education reform proposals in Kansas.

60.     The Shawnee Mission School District itself consistently and publically supports removal of the LOB Cap.

**<u>IRREPARABLE INJURY</u>**

61.     The LOB Cap causes irreparable harm to Plaintiffs.  It harms education for students.  It denies parents the right to spend their own money in support of their children's education and thereby interferes with their protected liberty interest in child-rearing.  It denies

17

local citizens the right to spend their own money on something they value, a strong public education system, which is a recognized necessary condition for maintaining strong property values.  Therefore, the LOB Cap also abridges Plaintiffs' property interests.  And it irreparably infringes on Plaintiffs' collective political freedoms to band together to advance the educational interests of their local community by pooling their collective resources through the mechanism of local taxation.  These injuries cannot be adequately compensated through individual monetary damages, even if a damages remedy were available.

62.     The School Closing Plan stems directly from the unconstitutional LOB Cap.  In the absence of the LOB Cap, the School Closing Plan would not be implemented.

63.     The LOB Cap also harms the public interest, by impairing educational outcomes in Kansas and reducing the quality of the educational system.

## COUNT I

### (The LOB Cap Violates Equal Protection; Against All Defendants)

64.     Plaintiffs incorporate the preceding paragraphs of the Complaint by reference.

65.     The LOB Cap violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution both on its face and as applied to Plaintiffs because it discriminates against certain groups of schoolchildren in Kansas without any rational basis.

66.     The LOB Cap violates the Equal Protection Clause because it discriminates against Plaintiffs with respect to fundamental rights, including the right of parents to direct and participate in the upbringing and education of their children, the right of parents and the Shawnee Mission School District patrons to spend their own money on something they value, improved public education, and the right to assemble, associate, and petition for the advancement of the educational interests of their children through the mechanism of a popular vote on increased

18

local taxation.  The LOB Cap cannot survive strict scrutiny or any applicable level of constitutional scrutiny.

## COUNT II

### (The LOB Cap Violates Due Process; Against All Defendants)

67.     Plaintiffs incorporate the preceding paragraphs of the Complaint by reference.

68.     The LOB Cap violates the Due Process Clause of the Fourteenth Amendment both on its face and as applied to Plaintiffs because it deprives students and parents of constitutionally protected liberty and property interests, including the interests of parents in directing and participating in the upbringing and education of their children and the interests of parents and local citizens in spending their own money to improve local public education, which in turn protects their local property values. The LOB Cap also violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution both on its face and as applied to Plaintiffs because it unduly impinges upon the First Amendment liberties of assembly, association, petition and speech made applicable to the State of Kansas and Defendants through the Fourteenth Amendment.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs ask this Court:

A.     To issue a preliminary and permanent injunction restraining Defendants, their successors, employees, officers, privies, and agents from enforcing the unconstitutional LOB Cap, K.S.A. 72-6433(b), as defined herein.

B.     To enter judgment declaring that the LOB Cap violates the Fourteenth Amendment to the United States Constitution.

C.   To issue a preliminary and permanent injunction restraining Defendants, their successors, employees, officers, privies, and agents from implementing or enforcing the School Closing Plan as defined herein.

D.   To grant such other and further relief as this Court should find just and proper, including reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

Should a Jury Trial occur, Plaintiffs designate Kansas City, Kansas as the place for Trial.

Dated: December 10, 2010

Respectfully submitted,


By: /s/ Tristan L. Duncan

| | | |
|---|---|---|
| Tristan L. Duncan, D. Kan. #70481 | Jonathan S. Massey | Laurence H. Tribe |
| SHOOK HARDY & BACON, LLP | MASSEY & GAIL, LLP | HAUSER HALL |
| 2555 Grand Boulevard | 1325 G St. N.W., Suite 500 | 1575 Massachusetts St. |
| Kansas City, Missouri 64108-2613 | Washington, DC  20055 | Cambridge, MA  02138 |
| Phone: (816) 559-2040 | Phone: (202) 652-4511 | |
| Facsimile: (816) 421-5547 | Facsimile: (312) 379-0467 | |
| Email: tlduncan@shb.com | Email:jmassey@masseygail.com | |


**ATTORNEYS FOR PLAINTIFFS**

4268975 v1