IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DIANE PETRELLA, et al.,           )
                                  )
            Plaintiffs,           )
                                  )
      v.                          )        Case No. 10-2661-JWL
                                  )
SAM BROWNBACK, Governor of Kansas, )
in his official capacity, et al., )
                                  )
            Defendants.           )
                                  )
_____ )

## MEMORANDUM AND ORDER

This matter presently comes before the Court on the motion to dismiss filed by

the Governor, Attorney General, and Treasurer of the State of Kansas ("the State

defendants"), all of whom have been named as defendants in their official capacities

(Doc. # 36).  The Court concludes that the Local Option Budget cap is not severable

from the rest of Kansas's statutory public school funding scheme; thus, if plaintiffs were

to prevail on their claim that the cap is unconstitutional, the entire scheme would be

struck down.  The Court further concludes that the Shawnee Mission School District has

no inherent or statutory authority outside the statutory funding scheme to impose a local

tax to benefit the district.  Accordingly, plaintiffs' alleged injury—the inability of the

district to raise unlimited funds through a local tax—would not be redressed by a

favorable decision on the merits of plaintiffs' claim, and plaintiffs therefore cannot

demonstrate standing as required under Article III of the United States Constitution.  For

that reason, the Court **grants** the State defendants' motion, and this action is hereby dismissed.[1]

## I.    <u>Background</u>

Plaintiffs are students and parents of students in the Shawnee Mission Unified School District No. 512.  On December 10, 2010, plaintiffs filed this action against the State defendants, the Kansas Commissioner of Education, and the members of the Kansas State Board of Education.  By their complaint, pursuant to 42 U.S.C. § 1983, plaintiffs claim that the Local Option Budget ("LOB") cap, found in K.S.A. § 72-6433(b), which limits the funds that a school district may raise by local tax, violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  In addition to seeking declaratory relief, plaintiffs seek to enjoin the enforcement of the LOB cap so that the Shawnee Mission School District

---

[1]In light of this ruling, the Court will not comment on the State defendants' other bases for a stay or for dismissal, the Commissioner and Board of Education defendants' motion to dismiss, or plaintiffs' motion for a preliminary injunction. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-102 (1998) (holding that a court lacks the authority to proceed to the merits of a case if subject matter jurisdiction is lacking, and noting that a prior case addressing the merits did not in fact involve the issue of standing and redressability under Article III); *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1211 (10th Cir. 2006) (Supreme Court's opinion in *Steel Co.* requires an issue concerning standing under Article III to be addressed before the merits are reached) (citing *Steel Co.*, 523 U.S. at 93-102).  Thus, the Court will not rule, for instance, on the question of whether there is a rational basis for the LOB cap.  The Court's dismissal of the action for lack of standing makes the other pending motions moot.

may authorize a local election to approve the imposition of a tax within the district in excess of the amount allowed by the cap. Plaintiffs have also filed a motion for a preliminary injunction to the same effect. The defendants filed motions to stay or to dismiss the action on various grounds.[2]

On February 14, 2011, the Court conducted a hearing at which it heard argument on the motions to dismiss and the motion for preliminary injunction. After that hearing, pursuant to the Court's request, the parties submitted additional briefs on the issues of the severability of the LOB cap from the Kansas statutory school funding scheme and the school district's independent authority to impose a local tax, as those issues relate to plaintiffs' standing to bring this action. The Court then heard additional oral argument on those issues at a telephone hearing conducted by the Court on February 18, 2011.[3]

## II.     Redressability

"Article III of the United States Constitution restricts the jurisdiction of federal courts to the adjudication of 'Cases' or 'Controversies'." *Bronson v. Swenson*, 500 F.3d 1099, 1106 (10th Cir. 2007) (citing U.S. Const. art. III, §2, cl. 1). A plaintiff bears the burden of establishing a case or controversy, or standing, by showing injury-in-fact,

---

[2]After a hearing on January 18, 2011, the Court allowed a group of students and parents of students from a few other school districts to intervene as defendants in this action.

[3]The telephone conference was conducted in open court and was attended by at least two members of the media.

causation, and redressability. *Id.* To establish redressability, a plaintiff must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

The State defendants argue that the injury alleged by plaintiffs in the present case—plaintiffs' inability to contribute more to their school district by means of local taxation unlimited by the LOB cap—cannot be redressed by a decision in favor of plaintiffs on the merits of their constitutional claims. In particular, defendants argue that if the LOB cap is found to be unconstitutional, then the entire statutory school funding scheme must be struck down, pursuant to the scheme's non-severability provisions, thereby leaving school districts without any authority whatsoever to levy taxes. Thus, even if plaintiffs prevailed, they still would not be able to approve a local school district tax.

In their initial response to defendants' standing argument, plaintiffs have argued that the type of the relief that they seek—permission for the school district to hold an election and levy taxes without being subject to the LOB cap—was implicitly authorized by the United States Supreme Court in its opinion in *Missouri v. Jenkins*, 495 U.S. 33 (1990), the Kansas City, Missouri, desegregation case. In *Jenkins*, the Court held that, under principles of comity, the district court should not have orderd a tax to pay for the necessary desegregation. *Id.* at 50-52. Plaintiffs here rely on the Supreme Court's comment in *Jenkins* that the district court instead "could have authorized or required [the school district] to levy property taxes at a rate adequate to fund the desegregation remedy

and could have enjoined the operation of state laws that would have prevented [the district] from exercising this power." *See id.* at 51. Plaintiffs argue that in this case they seek just such an order—one enjoining the state law (the LOB cap) that would otherwise prevent their school district from levying local taxes sufficient to fund schools at the desired level.

The Court concludes that *Jenkins* is distinguishable and does not provide plaintiffs with standing in this case. In *Jenkins*, the Supreme Court did not discuss any issues relating to severability or the school district's taxation authority. Moreoever, in the present case, unlike in *Jenkins*, the Court is not being asked to fashion a remedy to find funds to remedy a constitutional violation; rather, plaintiffs' claim that their inability to find funds on their own (by a local school district tax) *is* the violation. If the Court were to allow a local tax in the absence of any taxing authority from the State of Kansas, then it would be rewriting the state's laws, and not merely enjoining enforcement of laws (the remedy suggested by the Court in *Jenkins*). In fact, if the Court were to allow a local school district tax (and enjoin a limitation to that tax) without authority, such action would seem to be more akin to the act that the Supreme Court found improper in *Jenkins*.

Thus, to determine whether plaintiffs' school district may impose a local tax if the LOB cap is struck down as unconstitutional—and thus, whether plaintiffs' injury may be redressed if they prevail on their constitutional claims, in satisfaction of the redressability requirement for standing—the Court must consider whether the LOB cap is in fact severable from the rest of the statutory school funding scheme and, if not,

whether any authority exists to allow the school district to levy a local tax as plaintiffs desire.

### III.    <u>Non-Severability of the LOB Cap</u>

#### A.    <u>*Law Regarding Severability of Statutory Provisions*</u>

The severability of a state statutory provision presents a question of state law. *See Citizens for Responsible Govt. State Political Action Committee v. Davidson*, 236 F.3d 1174, 1195 (10th Cir. 2000) (citing *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 506-07 (1985)).  The Kansas Supreme Court has stated the test as follows:

> Whether the court may sever an unconstitutional provision from a statute and leave the remainder in force and effect depends on the intent of the legislature.  If from examination of a statute it can be said that the act would have been passed without the objectional portion and if the statute would operate effectively to carry out the intention of the legislature with such portion stricken, the remainder of the valid law will stand.  Whether the legislature had provided for a severability clause is of no importance.  This court will assume severability if the unconstitutional part can be severed without doing violence to legislative intent.

*Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1023 (1993) (quoting *Felten Truck Line, Inc. v. State Board of Tax Appeals*, 183 Kan. 287, 300 (1958)).  In the same case, the Kansas Supreme Court also reaffirmed this century-old standard:

> While it is undoubtedly true that a statute may be constitutional in one part, and unconstitutional in another, yet this rule obtains only where the two parts are separate and independent; and where they are so related that the latter is a condition of, a compensation for, or an inducement to, the former, or where it is obvious that the legislature, having respect to opposing rights and interests, would not have enacted one but for the other, then the constitutionality of the latter avoids the entire statute.

*Id.* (quoting *State ex rel. Marshall v. Consumers Warehouse Market, Inc.*, 185 Kan. 363, 372-73 (1959), which in turn quoted *Central Branch Union Pac. R.R. Co. v. Atchison, T. & S.F. R.R. Co.*, 28 Kan. 453 (1882)). A specific statutory directive may obviate the need to employ extrinsic aids, such as determining whether an act can operate without the particular provision, in discerning whether severance would violate legislative intent. *See State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 914 (2008).

B.       *The Act's Two Non-Severability Provisions*

The challenged LOB cap, K.S.A. § 72-6433(b), is part of the Kansas School District Finance and Quality Performance Act ("the Act"), K.S.A. ch. 72, art. 64, which provides for the funding of Kansas's public schools. The Act contains two separate non-severability provisions. K.S.A. § 72-6405(b) provides:

> Except for the provisions of K.S.A. 75-2321 [enacted in 2006, relating to construction bonds issued in districts with extraordinary declining enrollment], and amendments thereto, the provisions of the school district finance and quality performance act are not severable. Except for the provisions of K.S.A. 75-2321, and amendments thereto, if any provision of that act is stayed or is held to be invalid or unconstitutional, it shall be presumed conclusively that the legislature would not have enacted the remainder of such act without such stayed, invalid or unconstitutional provision.

At the same time, K.S.A. § 72-6453 provides:

> Except as provided by this section, the provisions of this act shall not be severable. If any provision of this act, other than the provisions relating to declining enrollment and the increase in supplemental state aid attributable to the increase in the state prescribed percentage under K.S.A. 72-6433, is held to be invalid or unconstitutional by court order, the entire act shall be null and void.

7

Thus, in two separate places, the Kansas Legislature has declared that the Act's provisions are non-severable, with specific exceptions.

Plaintiffs argue that the LOB cap falls within the exception in Section 72-6453. The two non-severability provisions are in conflict, however, as each provides that all provisions of the Act are non-severable with separate specific exceptions. Thus, the Court must determine whether Section 72-6453 and its exception remain good law.

Plaintiffs argue that "[u]nder well settled principles of statutory construction, the specific severability provision addressing K.S.A. 72-6433 by name should trump the more general, blanket provision of 72-6405(b)." Neither of the two non-severability provisions, however, is more specific than the other, as each sets forth a general rule of non-severability with specific exceptions.

Defendants, on the other hand, argue that the legislative history suggests that Section 72-6405(b) was intended to prevail. In 2005, the Kansas Legislature enacted a *severability* provision for the Act. Subsequently, in the 2005 Special Session, the Legislature enacted Section 72-6453. In 2006, the Legislature repealed the severability provision and replaced it with the present Section 72-6405(b), although it did not also repeal Section 72-6453. Defendants argue that by subsequently enacting Section 72-6405(b), the Legislature impliedly repealed Section 72-6453, with which it conflicts.

The Court agrees that Section 72-6453 has been impliedly repealed. The Kansas Supreme Court has set forth the governing principle as follows:

It is a settled rule of statutory construction that where an irreconcilable

> conflict exists between statutes, the latest enactment will be held to supersede, repeal or supplant the earlier by implication. Thus, the later enactment must prevail.

*Richards v. Etzen*, 231 Kan. 704, 707-08 (1982) (citations omitted); *accord State v. Casey*, 42 Kan. App. 2d 309, 320 (2009).

The pertinent history of the Act reads as follows: In January 2005, the Kansas Supreme Court held that the Kansas Legislature had failed to make suitable provision for the financing of the public school system as required by the Kansas Constitution. *See Montoy v. State*, 279 Kan. 817 (2005) ("*Montoy II*"). Later in 2005, the Legislature amended that financing scheme in several ways. *See Montoy v. State*, 279 Kan. 817, 821 (2005) ("*Montoy III*"). In June 2005, the supreme court held that the Legislature had not responded sufficiently to its January 2005 opinion, and it ordered the Legislature to implement immediately a funding increase. *See id.* at 846. The court also stayed certain of the new statutory provisions, including provisions regarding an increase to the LOB cap and extraordinary declining enrollment. *See id.* Then on July 6, 2005, in a special session, the Legislature amended the Act again, providing increased funding for the upcoming school year and making other changes. *See Montoy v. State*, 282 Kan. 9, 14 (2006) ("*Montoy IV*"). The supreme court approved those changes as complying with its opinion in *Montoy III* with respect to a funding increase for the next school year, although it retained jurisdiction over the case to review any further legislative action. *See id.* at 15. Finally, in its 2006 session, the Legislature enacted further changes to the school finance formula, and the supreme court held that the Legislature had succeeded

in complying with its prior orders. *See id.* at 16, 24-25. The supreme court noted that these final changes were significant: "Rather than modifying the provisions of [the two 2005 enactments], the legislature materially and fundamentally changed the way K-12 is funded in this state." *See id.* at 16; *see also id.* at 25 (noting that the most recent changes to the Act "have so fundamentally altered the school funding formula that the school finance formula that was at issue in this case no longer exists," and that the old formula "has been replaced with a fundamentally different funding scheme").

Thus, during the 2005 Special Session, the Legislature made changes to the Act in response to the Kansas Supreme Court's decision in *Montoy III*. At that time, the Legislature enacted the non-severability provision of Section 72-6453, with specific exceptions relating to provisions of the Act discussed and stayed by the supreme court. Then in 2006, the Legislature enacted sweeping changes to the Act and fundamentally altered the way that the funding scheme worked. As a part of those changes, the Legislature repealed an existing severability provision and replaced it with the present Section 72-6405(b), a specific and comprehensive non-severability provision. The facts that Section 72-6453's exceptions related to specific changes enacted at that time, and that the Legislature then fundamentally altered those same provisions while enacting a different non-severability provision (with a different exception for a newly-enacted provision), indicate that the Legislature intended Section 72-6405(b) to govern issues of severability within the new, fundamentally-altered Act—and thus support the application in this case of the general rule that the later-enacted provision supersedes a previously-

enacted inconsistent provision. Accordingly, the Court concludes that Section 72-6453 and its exception have been implicitly repealed and no longer constitute good law.

### C. *Applicability of Section 72-6453's Exception*

Moreover, even if Section 72-6453 remained effective, as plaintiffs argue, the LOB cap does not fall within that provision's exception. Plaintiffs argue that the LOB cap, found at K.S.A. § 72-6433(b), must fall within the exception in Section 72-6453, as that provision specifically mentions Section 72-6433. The exception is not for the LOB cap or for Section 72-6433(b), however; nor is there a blanket exception for all of the provisions found in Section 72-6433. Rather, the exception is specifically for provisions in the Act relating to the *increase* in the LOB cap—the very issue discussed by the supreme court in *Montoy III* and the subject of the court's stay, to which the 2005 Special Session legislation was directed. Plaintiffs here do not challenge the *increase* in the LOB cap; rather, they claim that the existence of any cap violates the Constitution. Thus, under the plain language of the statute, the LOB cap itself is not excepted from the general non-severability provision of Section 72-6453.[4]

### D. *Other Factors Bearing on Severability*

---

[4]At the telephone hearing, plaintiffs attempted to fit their suit within the exception by suggesting that they were in fact attacking provisions relating to declining enrollment and the increase of the cap, as the combination of the funding scheme in general and the cap produced their injury. Such a characterization of their claim seems disingenuous, as plaintiffs have consistently described their suit as a "surgical" attack on the LOB cap alone. At any rate, plaintiffs' complaint very specifically claims that the cap itself (not the increase in the cap) is unconstitutional.

Plaintiffs also argue that, even if the LOB cap does not fall within any exception in the Act's non-severability provisions, other factors should compel a conclusion that the cap may be severed, and thus struck without affecting the remainder of the Act. Specifically, plaintiffs argue that the funding scheme in general is not affected and could continue even if the cap were invalidated; that the cap is not central to the scheme; that LOB money is important to the scheme (thus, lifting the cap would not hurt the scheme); and that the cap is different from the weighting factors that are interconnected with the scheme as a whole.

The Court rejects this invitation by plaintiffs to ignore the language of the non-severability provision. As noted above, the key here is the intent of the Legislature, and the Legislature revealed its intent regarding severability in the strongest of terms by enacting an extremely pointed non-severability provision, *see* K.S.A. § 72-6405(b) ("it shall be presumed conclusively that the legislature would not have enacted the remainder of such act without such . . . unconstitutional provision"), as well as by its simultaneous repeal of a severability provision. Indeed, the fact that the Legislature enacted *two* non-severability provisions confirms that intent. Moreover, the interconnectedness of all of the provisions is demonstrated by an examination of the Act as a whole, as well as by the history of the litigation of the *Montoy* case, in which the Kansas Supreme Court specifically referred to wealth-based disparities among districts as a problem to be addressed and ultimately approved the LOB provisions as adequately addressing that problem.

Finally, the Court rejects plaintiffs' argument that non-severability should be avoided because it creates the Article III problem that the LOB cap could never be effectively challenged. Certainly, the cap can be challenged, but the entire funding scheme would then be invalidated—an effective result if in fact the cap is unconstitutional. It is only plaintiffs' desired remedy—striking only the cap, so that the school district retains the right to impose an LOB tax—that does not work.

For these reasons, the Court concludes that the LOB cap is not severable from the rest of the Act, and that if the cap were determined to be unconstitutional, the entire Act would be invalidated.

**IV.    Independent Authority for Local School District Taxation**

*A.    Effect of Independent Authority on the Issue of Standing*

Because plaintiffs' school district would lose its authority from the Act to impose a local tax if plaintiffs prevail here on their claims (because the entire Act would be struck down), plaintiffs can only establish redressability as a prerequisite to standing by showing that the district could nonetheless impose such a tax, pursuant to some other taxing authority outside the Act. Plaintiffs argue that the district does possess such independent taxing authority, for a number of reasons.

In response, defendants argue that if the district does indeed possess such independent taxing authority, it may simply exercise that authority without the need for this suit; thus, plaintiffs would still lack standing, as the existence of the cap would not

be the cause of the district's inability to impose additional taxes. Plaintiffs respond that, with the cap in place, the district's ability to exercise its independent taxing authority remains limited. The Court agrees with defendants, however, that the LOB cap is not a cap on all taxes imposed by a school district; rather, it is a limitation on the specific LOB taxing authority granted in the Act. *See* K.S.A. § 72-6433(b) (LOB cap provides that "the board of any district may adopt a local option budget which does not exceed the state prescribed percentage"). Therefore, assuming that plaintiffs are correct that the school district does have an independent taxing authority outside the Act, plaintiffs have no need to strike down the LOB cap, and their standing problem remains.[5]

### B. *Plaintiffs' Asserted Bases for Independent Taxing Authority*

Moreover, plaintiffs have not shown that their school district in fact does possess such independent taxing authority. The Court addresses in turn each such basis proffered by plaintiffs.

#### 1. K.S.A. § 72-8205(e)

Plaintiffs first cite to K.S.A. § 72-8205(e), which provides that a local board of education "may transact all school district business and adopt policies that the board deems appropriate to perform its constitutional duty to maintain, develop and operate local public schools." Plaintiffs argue that Section 72-8205(e) effectively gives school

---

[5]This conclusion would not apply to plaintiffs' reliance on K.S.A. § 79-1964, as the school district could proceed under that statute only if the Act were struck down. *See infra* Part IV.B.3.

districts "home rule" powers, which in turn must implicitly include the power to tax. Plaintiffs have not cited any authority for that interpretation of Section 8205(e), other than a recent legislative briefing book's reference (without explanation) to Section 8205(e)'s powers as "limited home rule powers." Of course, such a briefing book hardly constitutes persuasive legal authority, and at any rate, the "limited" nature of the home rule power could refer to the lack of a corresponding authority to tax.

Plaintiffs also note that, four years before the adoption of Section 72-8205(e), the Legislature failed to pass a similar bill that also would have expressly limited local school boards' power to tax. The Court does not find that fact material, however. Section 72-8205(e) does not contain any grant of authority to local school boards to impose or levy any tax. Plaintiffs have not provided any authority to support the notion that the lack of a prohibition against taxing in the present statute could somehow equate to a grant of authority to tax, and the Court declines to adopt such an interpretation of the statute. The Court finds more pertinent the Kansas Supreme Court's express declaration that "Kansas school districts have no inherent power of taxation and never have had." *See Unified Sch. Dist. No. 229 v. State*, 256 Kan. 232, 252 (1994). When the Legislature enacted Section 8205(e) in 2003, it gave no indication that it intended to create such an inherent or implied power in school districts for the first time. The fact that the Legislature gave school districts the express power to "transact business" and to "adopt policies" in Section 72-8205(e) does not necessarily or reasonably mean that it also granted a power to tax. The Court therefore rejects this basis for a taxing authority

independent of the Act.

2.      K.S.A. § 72-8204a

Second, plaintiffs argue that taxing authority may be derived from K.S.A. § 72-8204a, which provides that "[e]very school district shall be a municipality" for purposes of K.S.A. §§ 79-2925 to -2968, which provisions relate in part to taxes. The Court rejects that basis as well. The sections of Chapter 79 referenced in Section 72-8204a, which are collectively captioned "Budgets of Taxing Subdivisions," merely set forth provisions relating to budgeting or to procedures for exercising taxing authority granted elsewhere; they do not grant any independent taxing authority to municipalities or other entities subject to those provisions, with the exception of certain warrants that are not at issue here. *See* K.S.A. §§ 79-2925 to -2968.

At the telephone hearing on this issue, plaintiffs noted the following statements by the Tenth Circuit in *Unified School District No. 480 v. Epperson*, 583 F.2d 1118 (10th Cir. 1978):

> For budgetary and taxing purposes, a local unified school district in Kansas is considered a municipality. Kan. Stat. § 72-8204a. The State of Kansas, as does the State of Ohio, furnishes substantial state aid to the local school districts, though the latter fix their own budgets and are empowered to levy and collect taxes within the local school district with which to fund their budget. Kan. Stat. §§ 72-7021, 8204(a) [sic], 79-2925, 2931.

*Id.* at 1123. Relying on that language, plaintiffs argue that the Tenth Circuit has

recognized that Section 72-8204a empowers school districts to levy taxes.[6] The Court is not persuaded. Two of the sections cited by the Tenth Circuit in *Epperson* (Sections 72-7021 and 79-2931) have been repealed, while the other two sections (Sections 72-8204a and 79-2925), as noted above, do not grant any taxing authority. At the time that *Epperson* was decided, local school districts did indeed have the power to levy taxes—a power granted by the statutory school funding scheme in effect at the time. *See Unified Sch. Dist. No. 229*, 256 Kan. at 242-43 (relating the history of public school funding in Kansas). Thus, the Tenth Circuit cited to a provision of a former school funding act (Section 72-7021, which had been repealed in 1973), and then cited to provisions, including Section 72-8204a, pertaining to the procedures by which a school district could exercise its taxing authority. The court did not hold that Section 72-8204a granted any taxing authority to school districts independent of the governing school funding statutes.

At the telephone hearing, plaintiffs also noted that the title of Section 72-8204a includes "tax levy". The statute reads in its entirety as follows:

> Every school district shall be a municipality for the purpose of K.S.A. 79-2925 to 79-2968, inclusive, and acts amendatory thereof and supplemental thereto. The annual budget amounts of ad valorem tax to be levied of every school district shall be certified to the county clerk of the home county of the school district. The county clerk of the home county of each school district, the territory of which is located in more than one county,

---

[6]At the telephone hearing, the intervenor defendants argued that the Tenth Circuit's reference to "the latter" refers to the State of Ohio in the excerpt. The Court concludes, however, that "the latter" more likely refers to "local school districts" in Kansas, in light of the subsequent use of a plural pronoun and a plural verb and the citations to Kansas statutes.

shall certify the final tax levy rate computed pursuant to K.S.A. 79-1803
of such school district to the county clerk of every other county in which
a part of the territory of such school district is located.

Thus, the statute does relate to tax levies, in that it discusses the certification of the

amounts of taxes levied; it does not, in and of itself, grant any independent taxing

authority to a school district.

3.     K.S.A. § 79-1964

Finally, although they did not raise the issue in their supplemental brief, plaintiffs

argued at the telephone hearing that independent taxing authority could be derived from

K.S.A. § 79-1964.  That statute provides in relevant part as follows:

If any board of levy, or any officer that is charged with the duty of levying
taxes in any taxing district . . ., or if the district board of any school district
shall be of the opinion that the amount of tax will be insufficient for the
needs of such taxing district for the current year, the question of an
increased levy or budget may be submitted to the voters of such taxing
district . . . .  If three-fourths of the votes cast at any such election shall be
in favor of the increased levy . . ., then the officers charged with levying
taxes shall make such increased levy for the year voted upon . . .:
*Provided, however*, that the increased levy or budget voted in accordance
with this section shall in no event exceed twenty-five percent of the
maximum levies authorized by law in any taxing district.

Although this statute makes specific reference to school districts, a later-enacted

provision contained in the Act, K.S.A. § 72-6435(c), provides that no school district shall

proceed under K.S.A. § 79-1964.  Plaintiffs thus argue that if they prevailed on the

merits and the entire Act (including Section 72-6435(c)) were struck down, then school

districts would be permitted to proceed under K.S.A. § 79-1964, which provides a grant

of taxing authority specifically to school districts.[7]

The Court rejects this argument as well. Section 79-1964 does not grant primary taxing authority to school districts; rather, it provides that if authorized taxes are insufficient, school districts may gain voter approval and impose an *increased* levy. In this case, plaintiffs' school district would not have any taxing authority whatsoever (if the Act were struck down); thus, plaintiffs cannot take advantage of Section 79-1964's provision for an *increased* levy. Indeed, the final sentence of the statute makes this clear, as the district's increased levy would be limited to 25 percent of the maximum levies otherwise authorized—or 25 percent of zero. Thus, plaintiffs could not proceed under Section 79-1964 if the Act were struck down as unconstitutional.

4.    SUMMARY

In summary, plaintiffs have not shown that their school district possesses any authority, outside of the Act, to impose local taxes. Accordingly, if plaintiffs prevailed on the merits of their claim and the Act were struck down in its entirety, plaintiffs' school district still could not raise additional funds by means of a local tax. Thus, plaintiffs have not met their burden to show that their alleged injury—the district's

_____

[7]At no time have plaintiffs sought to strike down the entire Act. At the telephone hearing, in making this argument for the first time, plaintiffs appeared to argue that, in the alternative, if the LOB cap cannot be severed and the entire Act were struck down, plaintiffs would nonetheless have standing by virtue of Section 79-1964. Of course, an amendment to the complaint would be required for plaintiffs to change their requested relief in this manner, and no such amendment has been sought. At any rate, because Section 79-1964 would not provide independent taxing authority in this case, for the reasons stated herein, any such amendment would be futile.

inability to raise additional funds by that means—would be redressed by a favorable decision in this case, and plaintiffs' suit fails for lack of standing.

## V.    <u>Conclusion</u>

In their brief in opposition to defendants' motions to dismiss, plaintiffs characterized defendants' arguments relating to the non-severability of the LOB cap as "a form of constitutional blackmail" that should not be permitted "to excuse a violation of Plaintiffs' rights."  Plaintiffs' failure to establish their standing to pursue this suit as required under Article III of the Constitution—with this Court's corresponding lack of subject matter jurisdiction—does not represent a mere technical failure that may be excused so that the constitutionality of the LOB cap might be addressed.  There is no blackmail here; these plaintiffs or any other aggrieved persons could seek to strike down the cap and the rest of the Act as unconstitutional.  Under Kansas law, however, the LOB cap may not be severed from the rest of the Act.  The cap was not a mere add-on or independent provision; rather, as demonstrated by the history of the Act and the *Montoy* case, the cap was a fundamental and integral part of a funding scheme that the Legislature enacted after years of litigation and multiple attempts to fashion a suitable scheme.  Moreover, plaintiffs' school district cannot levy a local tax without the authority granted in the Act.  Thus, plaintiffs are not entitled to the relief that they request, and the Court therefore dismisses this case.

IT IS THEREFORE ORDERED BY THE COURT THAT the State defendants' motion to dismiss for lack of standing (Doc. # 36) is **granted**, and this action is hereby dismissed.

IT IS SO ORDERED.

Dated this 11th day of March, 2011, in Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
John W. Lungstrum
United States District Judge