IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DIANE PETRELLA, et al.,                          )
                                                 )
                    Plaintiffs,                  )
                                                 )
            v.                                   )          Case No. 10-2661-JWL
                                                 )
SAM BROWNBACK, Governor of Kansas,               )
in his official capacity, et al.,                )
                                                 )
                    Defendants.                  )
                                                 )
_____)

## MEMORANDUM AND ORDER

This matter presently comes before the Court on plaintiffs' motion for reconsideration of the Court's Memorandum and Order of October 29, 2013 (Doc. # 121). For the reasons set forth below, the Court **denies** the motion for reconsideration.

By its prior order, the Court ruled that plaintiffs have not stated a claim for a violation of a recognized fundamental right, and accordingly it dismissed plaintiffs' equal protection claim to the extent based on a strict scrutiny standard and their due process claim. *See* Memorandum and Order of Oct. 29, 2013 (Doc. # 119). The Court also denied plaintiffs' motion for summary judgment on their equal protection claim under a rational basis standard, denied plaintiffs' motion for a preliminary injunction, and denied defendants' remaining motions to dismiss or for a stay. *See id.*

Plaintiffs now seek reconsideration of the Court's ruling concerning plaintiffs'

allegations of a violation of a fundamental right. Plaintiffs argue that the Court

misapprehended its arguments and that reconsideration is necessary to correct clear error

and prevent manifest injustice. *See* D. Kan. Rule 7.3(b) (standard for a motion for

reconsideration). Whether to grant or deny a motion for reconsideration is committed

to the district court's discretion. *See Wright ex rel. Trust Co. of Kan. v. Abbott Labs.,*

*Inc.*, 259 F.3d 1226, 1235 (10th Cir. 2001).

   1. Plaintiffs' first argument is prompted by the Court's citation in its prior

order to the Tenth Circuit's opinion in *Save Palisade FruitLands v. Todd*, 279 F.3d 1204

(10th Cir. 2002). Plaintiffs argue that they did not have the opportunity to address that

case because it had not been cited in any of the parties' briefs. In its order, the Court

addressed plaintiffs' argument pursuant to *Citizens Against Rent Control/Coalition for*

*Fair Housing v. City of Berkeley*, 454 U.S. 290 (1981), in which the Supreme Court held

that a statutory limit on campaign contributions to committees concerning ballot

measures limited speech and violated the First Amendment's right of association. *See*

*id.* In rejecting plaintiffs' argument, this Court reasoned as follows:

> That case is clearly distinguishable, however, as the statute at issue limited
> the exercise of an existing ballot measure provision. In the present case,
> plaintiffs are essentially arguing in favor of a fundamental right to
> associate to pursue a particular voter initiative in a manner not presently
> authorized under Kansas law (i.e., approving a tax in excess of the
> statutory cap). The Tenth Circuit, however, has explicitly rejected the
> concept of a fundamental right to pursue a voter initiative. *See Save*
> *Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210-11 (10th Cir. 2002)
> ("[N]othing in the language of the Constitution commands direct
> democracy, and we are aware of no authority supporting this argument.
> In fact, every decision of which we are aware has held that initiatives are

2

state-created rights and are therefore not guaranteed by the U.S. Constitution."). Otherwise, plaintiffs' right to associate has not been abridged, as they are free to join together, for instance, to petition the Kansas Legislature to repeal the LOB cap. Thus, the *Citizens* case does not support heightened scrutiny here.

In response to the Court's statement that there is no fundamental right to pursue a particular voter initiative, plaintiffs cite *Meyer v. Grant*, 486 U.S. 414 (1988), in which the Supreme Court struck down a statute that prohibited paying for petition circulation under a state's initiative process. *See id.* Specifically, plaintiffs argue that under the "unconstitutional conditions" doctrine, a statute may not impose an unconstitutional condition (in this case, the LOB cap) on a benefit conferred by the government (in this case, the general right to pursue voter initiatives in Kansas), whether or not the receipt of that benefit is required by the Constitution.

The Court rejects this argument. In *Meyer*, the defendant argued that because initiatives were a state-created right, the state could also restrict initiatives, but the Court rejected that argument and applied "exacting scrutiny" because the statute restricted political speech concerning the subject of an initiative. *See id.* at 424-25. *Meyer* is thus easily distinguished, as the present case does not involve any restriction on speech relating to a voter initiative; rather, plaintiffs here complain about the prohibition against the particular initiative that they wish to pursue.

Indeed, in *Save Palisade*, the Tenth Circuit distinguished *Meyer* in the same way:

[P]erhaps most important, all of these cases [cited by the plaintiffs] involve situations where a political subdivision had already been granted the power of initiative and the state attempted to regulate the speech

3

associated with the initiative process. For example, in the primary First Amendment case cited by [the plaintiffs], *Meyer v. Grant*, the Court struck down a law banning payments to petition circulators. Unlike the instant case, however, *Meyer* involved a situation where the state had already granted electors the power of initiative. 486 U.S. at 424. Moreover, the *Meyer* Court struck down the law not because of anything unique to an initiative scheme, but rather because it limited the number of messengers available to spread core political speech. *Id.* at 422-23.

*See Save Palisade*, 279 F.3d at 1211. Four years later, in *Initiative and Referendum Institute v. Walker*, 450 F.3d 1082 (10th Cir. 2006), the Tenth Circuit made the same distinction. After noting that in other cases it had struck down laws regulating the political speech that accompanies an initiative drive, the Tenth Circuit distinguished such cases as involving laws regulating the process of advocacy itself, for example by dictating who could speak or how the speaking must be done. *See id.* at 1099. The court stated that "[a]lthough the First Amendment protects political speech incident to an initiative campaign, it does not protect the right to make law, by initiative or otherwise." *See id.*

Again, in the present case, plaintiffs assert that they have been denied the right to pursue a vote within their school district for additional funding for public schools. Thus, plaintiffs have not asserted an abridgement of their speech incident to an initiative, but rather they assert a right to a particular initiative. In *Save Palisade* and again in *Initiative and Referendum Institute*, the Tenth Circuit made clear that there is no such fundamental right. In *Save Palisade*, the court held that the mere fact that the state has created an initiative process "does not require that an initiative process be granted to all

4

political subdivisions or with respect to all subjects." *See Save Palisade*, 279 F.3d at 1211. Accordingly, this Court's citation to and reliance on *Save Palisade* was apt, and the Court rejects this argument for reconsideration of its prior order.

2. Plaintiffs also argue that the Court failed to address their argument that a fundamental right is at issue here because the act of voting constitutes protected speech. Plaintiffs note that severe restrictions on voting rights may be subject to strict scrutiny. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992). The Court rejects this argument for the recognition of a fundamental right here. As explained above, the present case does not involve a restriction on plaintiffs' exercise of their right to vote on measures on the ballot, but instead involves a restriction on their ability to get something on the ballot in the first place. Thus, the Court concludes that this case is governed by *Save Palisades*, in which the Tenth Circuit rejected the application of strict scrutiny. In that case, the Tenth Circuit rejected the plaintiffs' reliance on right-to-vote cases, stating that "alleging a violation of free speech or voting rights does not transform what is essentially an initiative case into a voting rights case, and thereby trigger strict scrutiny." *See Save Palisade*, 279 F.3d at 1211 n.4. The Court rejects this basis for reconsideration.

3. Plaintiffs argue that reconsideration is warranted because the Court failed to address their argument that the "promulgation" of education constitutes speech. Plaintiffs argue that the LOB cap at issue here restricts the promulgation of education and thus restricts speech, and that Supreme Court cases striking down campaign spending limits are therefore applicable to this case.

5

The Court rejects this argument. Plaintiffs have still failed to provide authority recognizing the specific fundamental right asserted here, namely the right to provide additional funds, through a tax approved by local vote, for public education. In its prior order, the Court discussed and distinguished Supreme Court cases involving education. Under plaintiffs' argument, any restriction on education would be subject to strict scrutiny, but such a result would be inconsistent with the Supreme Court's rejection of that standard in *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1 (1973), and *Papasan v. Allain*, 478 U.S. 265 (1986). Moreover, the LOB cap does not restrict the promulgation of education generally, but only concerns funding for *public* education. As the Court noted in its prior opinion, the LOB cap does not affect plaintiffs' ability to spend money on their education or otherwise to "promulgate" education. Accordingly, the Court rejects this argument for the recognition of a fundamental right in this case.

4.      Finally, plaintiffs seek reconsideration on the basis that the Court failed to appreciate plaintiffs' arguments for distinguishing the Supreme Court's opinion in *Rodriguez* (in which the Supreme Court rejected the strict scrutiny standard) and thus that the Court erred in ruling that *Rodriguez* governed the present case. The Court rejects this argument as well.

First, the Court did not rule in its prior order that *Rodriguez* "required" application of the rational basis standard, as plaintiffs argue. In rejecting the strict scrutiny standard, the Court first noted that plaintiffs had not been able to provide authority recognizing a

6

fundamental right in this context, and it stated that it would not declare a new fundamental right in the absence of such authority. Moreover, the Court addressed each particular right asserted by plaintiffs. The Court also discussed *Rodriguez*, and it concluded, based on language in that opinion, that the Supreme Court's opinion in that case "supports" a rejection of strict scrutiny in the present case.

Plaintiffs argue that *Rodriguez* is distinguishable because in that case the plaintiffs sought more money from the state for public education, while in the present case, plaintiffs challenge their inability to provide additional local funds. This Court did not suggest in its prior opinion that *Rodriguez* was on all fours with the present case; indeed, the Court explicitly noted plaintiffs' argument that *Rodriguez* does not necessarily control here. Nevertheless, the Court cited the Supreme Court's recognition in *Rodriguez* of its traditional deference to state legislatures concerning fiscal schemes and the manner in which a state raises and disburses state and local tax revenues. The Court remains convinced that the Supreme Court's discussion of the applicable standard in *Rodriguez* is consistent with the application of the rational basis standard in the present case. Therefore, the Court rejects this basis for reconsideration as well.

5.      In summary, plaintiffs have still failed to provide authority supporting the recognition of a fundamental right as specifically asserted by plaintiffs. Accordingly, the Court reaffirms its prior reasoning and conclusions that the present case does not involve the abridgement of a fundamental right and that the strict scrutiny standard of review is not appropriate here. The Court therefore denies plaintiffs' motion for

7

reconsideration of its dismissal of plaintiffs' due process claim and their claim for a violation of the Equal Protection Clause under the strict scrutiny standard. Moreover, in light that ruling, there is no basis for reconsideration of the Court's denial of plaintiffs' motion for a preliminary injunction.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion for reconsideration (Doc. # 121) is **denied**.

IT IS SO ORDERED.

Dated this 28th day of January, 2013, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
